Thomas J. Coleman, Jr., Esq. (SBN: 145663)
Associate Counsel, Legal Services
WRITERS GUILD OF AMERICA, WEST, INC.
7000 W. Third Street
Los Angeles, California 90048
(323) 782-4521
(323) 782-4806 FAX

Attorney for Petitioner

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

CV09-06582 AHM PJW

| | |
|---|---|
| Writers Guild of America, West, Inc., | CASE NO.: |
| Petitioner, | **1. NOTICE OF MOTION AND MOTION FOR ORDER CONFIRMING THE ARBITRATOR'S FINDINGS AND CONCLUSIONS AND FINAL AWARD AND FOR ENTRY OF JUDGMENT IN CONFORMITY THEREWITH;** |
| vs. | |
| Carlson Entertainment Group, LLC d/b/a Carlson Entertainment Group and Bruce Carlson, an Individual, | |
| Respondents. | **2. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;** |
| | **3. DECLARATION OF THOMAS J. COLEMAN, JR.** |

DATE 10/19/09
TIME: 10:00 a.m.
CTRM: Spring St., 14

HONORABLE
A. Howard Matz

<u>NOTICE OF MOTION</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that pursuant to § 301(a) of the Labor

Management Relations Act of 1947 ("LMRA"), as amended, (29 U.S.C. § 185(a)), on

October 19, 2009, at 10:00 am, or as soon as the matter may be heard, petitioner

1

W:\Compensation cases\Co06036\PTC Notice Memo Declaration.doc

1    Writers Guild of America, West, Inc. ("WGAW", "Guild" and/or "Petitioner") will

2    petition the Court in Courtroom 14 of the United States District Court located at

3    312 N. Spring St ___ , Los Angeles, California for an Order:

4         1.    Confirming the Arbitrator's Award ("Award") in all respects.

5         2.    Entering judgment in conformity therewith.

6         3.    Awarding attorneys' fees in the amount of $1,500.00 and costs in the

7    amount of $350.00.

8         4.    Awarding such other and further relief as the Court deems just and

9    proper.

10        This Motion is made on the grounds that the Award in WGAW Arbitration

11    Case Number 06-CO-036 was issued pursuant to the collective bargaining agreement

12    to which Petitioner and Respondents Carlson Entertainment Group, LLC d/b/a

13    Carlson Entertainment Group and Bruce Carlson are bound.  The collective bargaining

14    agreement expressly provides that such an Award may be confirmed in a Court of

15    competent jurisdiction.

16        The Motion is based upon this Notice of Motion, the Memorandum of Points

17    and Authorities attached hereto, the accompanying Motion, all pleadings and papers

18    on file in this action and upon such further oral or documentary evidence as may be

19    presented to the

20    Court at the time of hearing.

21

22                                WRITERS GUILD OF AMERICA WEST, INC.

23

24    DATED: 8/31/09          By: _____
                                          Thomas J. Coleman, Jr.
25                                        Attorney for Petitioner

26

27

28

                                    2

## MEMORANDUM OF POINTS AND AUTHORITIES

Petitioner respectfully submits the following Memorandum of Points and Authorities in support of this Motion for Order Confirming the Arbitrator's Award ("Award").

### I.

### STATEMENT OF FACTS

A.   Parties

This Motion is brought by the WGAW to confirm the Award issued pursuant to the WGAW's collective bargaining agreement with various employers in the television and theatrical motion picture industry.  Respondent Carlson Entertainment Group, LLC d/b/a Carlson Entertainment Group ("CEG") became signatory to or otherwise bound by the 2004 WGA Theatrical and Television Basic Agreement ("MBA") by the signature of its authorized agent.

Respondent Bruce Carlson ("Carlson") signed a letter personally guaranteeing the MBA obligations of Respondent CEG.

Respondents CEG and Carlson (collectively "Respondents") are therefore jointly and severally liable for any and all MBA obligations in connection with the theatrical motion picture entitled "Dad" ("Picture") including, but not limited to those outlined herein.

During the term of the MBA, Respondent CEG entered into an employment agreement with the writing team of Lorenzo Hodges and Trevor Dellecave (collectively "Writing Team") for the Writing Team to write a treatment, first draft screenplay and a final draft screenplay in connection with the Picture.  In breach of the provisions of the agreement and MBA, Respondents have failed and refused, and continue to fail and refuse to pay the Writing Team guaranteed compensation due it.

Respondents are liable for any and all MBA obligations in connection with the Picture.

W:\Compensation cases\Co06036\PTC Notice Memo Declaration.doc

1     The MBA is a collective bargaining agreement between the WGAW and

2     various theatrical and television employers in the motion picture and television

3     industries, industries affecting commerce in the United States. The MBA contains

4     arbitration provisions that govern disputes arising under its terms.

5         Respondents are therefore liable for all the obligations and violations alleged

6     herein.

7

8   B.    The Award Against Respondents

9         Pursuant to the arbitration provisions contained in Articles 10, 11 and 12 of the

10    MBA, the parties submitted the above-described dispute to Joel Grossman, the sole

11    neutral Arbitrator ("Arbitrator"). The Arbitrator signed and issued his Award on April

12    7, 2008. True and correct copies of MBA Articles 10, 11 and 12 are attached hereto

13    as Exhibit "A" and are incorporated herein by this reference. A true and correct copy

14    of the Award is attached hereto as Exhibit "B" and is incorporated herein by this

15    reference.

16        In the Award, Arbitrator Grossman ordered the following:

17        1.    Respondents shall pay to the WGAW on behalf of the writing team of

18    Lorenzo Hodges and Trevor Dellecave ("Writing Team") 1) unpaid compensation in

19    the total principal amount of $37,786, together with interest on the unpaid

20    compensation at the rate of 1.5% per month from May 5, 2006, with interest accruing

21    until the unpaid compensation is paid in full;  and 2) pension and health contributions

22    on behalf of the Writing Team in the principal amount of $22,504, together with

23    interest on the unpaid contributions at the rate of .83% from April 7, 2007, with

24    interest accruing until the contributions are paid in full.

25        Demand for payment of the Award was sent to Respondents on or about

26    September 11, 2008. Respondents have failed and/or refused and continues to fail

27    and/or refuses to pay any and all the sums required by the Award described above.

28    Petitioner hereby seeks an Order of the Court confirming the Award and entering

1  judgment in conformity therewith, and pursuant to California Code of Civil Procedure

2  §§ 1032(b) and 1033.5 and the LMRA, Respondents should be ordered to pay the

3  WGAW attorneys' fees in the amount of $1,500.00 and costs in the amount of

4  $350.00 as set forth in the accompanying Declaration of Thomas J. Coleman.

5                                              II.

6                              LAW AND ARGUMENT

7  A.     This Court is Empowered to Confirm the Award

8          The District Courts are empowered to enforce Awards issued in accordance

9  with a collective bargaining statement. United Steelworkers of America v. Enterprise

10 Wheel and Car Corp., 363 U.S. 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The

11 Award was based upon the aforementioned MBA, the collective bargaining

12 agreement to which Petitioners and Respondents are bound. Article 12.E. of the

13 MBA allows any Court of competent jurisdiction to confirm the Award. Accordingly,

14 this Court is empowered to affirm and enforce the Award.

15 B.     An Award Must Be Upheld If It Draws Its Essence From The Collective

16 Bargaining Agreement

17         Under the Steelworkers Trilogy cited below, the Court will not review the

18 substantive merits of an Award made in accordance with a collective bargaining

19 agreement. See United Steelworkers v. American Manufacturing Co., 363 U.S. 564,

20 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior and Gulf

21 Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United

22 Steelworkers v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4

23 L.Ed.2d 1424 (1960). Instead, the Court will defer to the Arbitrator's legal and factual

24 determinations. American Postal Workers Union AFL-CIO v. United States Postal

25 Service, 682 F.2d 1280, 1284 (9th Cir. 1982), cert. denied, 459 U.S. 1200, 103 S.Ct.

26 1183, 75 L.Ed.2d 431 (1983).

27

28

                                              5

1    If the Arbitrator's Award draws its essence from the collective bargaining

2    agreement in the context of the text of the agreement and the conduct of the parties,

3    the Award will be upheld.  United Steelworkers v. Enterprise Wheel and Car Corp.,

4    supra, 363 U.S. at 597; Broadway Cab Cooperative v. Teamsters and Chauffeurs

5    Local 281, 710 F.2d 1379, 1382 (9th Cir. 1983).

6        In this instance, on the basis of the Award entered into between the WGAW and

7    Respondents, the Arbitrator applied the relevant provisions of the collective

8    bargaining agreement, the MBA, to the facts and found Respondents liable to the

9    Writing Team for unpaid compensation in connection with the Picture.

10        As a matter of public policy and in the interest of the stability of labor relations,

11   the collective bargaining agreement and the Award issued thereunder must be

12   enforced.

13        Accordingly, the Award, drawing its essence and terms from the collective

14   bargaining agreement, should be confirmed and judgment should be entered in

15   conformity therewith.

16   C.    Petitioner Should Be Awarded Attorneys' Fees

17        Attorneys' fees may be recovered in an action brought under the LMRA § 301

18   and 29 U.S.C. § 185, where a party without justification refuses to abide by an Award.

19   International Union of Petroleum and Industrial Workers v. Western Industrial

20   Maintenance, Inc., 707 F.2d 425, 428 (9th Cir. 1983); See also UAW v. United Farm

21   Tools Inc., 762 F.2d 76, 77 (8th Cir. 1985) (unjustified refusal to abide by Award,

22   combined with failure to act to set aside award, is evidence of bad faith sufficient to

23   warrant attorneys' fees).

24        Although served with a copy of the Award, Respondents have refused to

25   comply with it.  In addition, Respondents have taken no timely action to correct or

26   vacate the Award.  These facts demonstrate Respondents' bad faith disregard for the

27   provisions of the MBA.  Therefore, the Court should award the WGAW its reasonable

28

1 attorneys' fees in the amount of $1,500.00 and costs in the amount of $350.00 as set

2 forth in the accompanying Declaration of Thomas J. Coleman.

3                                                III.

4                                         CONCLUSION

5          For all the foregoing reasons, Petitioner requests an Order confirming the

6 aforementioned Award, entering judgment in conformity therewith, and awarding

7 attorneys' fees in the amount   of $1,500.00 and costs in the amount of $350.00 to the

8 WGAW.

9

10                                        Respectfully submitted,

11                                        WRITERS GUILD OF AMERICA WEST,

12                                        INC.

13

14 DATED: _8/31/09_              By: _____

15                                           Thomas J. Coleman
                                             Attorney for Petitioners

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                7

## DECLARATION OF THOMAS J. COLEMAN

I, Thomas J. Coleman, declare:

1.     I am the attorney for Petitioner Writers Guild of America, West, Inc. ("WGAW" or "Guild") in the matter before this Court.

2.     I have read the Motion for Order Confirming the Arbitrator's Award and for Entry of Judgment in Conformity Therewith ("Motion").  The allegations contained in the Motion are true to my own knowledge except as to those matters which were stated on information and belief as to those matters, I believe them to be true.

3.     This declaration is submitted in support of the WGAW's request for reimbursement of attorneys' fees pursuant to California Code of Civil Procedure §§ 1032(b) and 1033.5, and § 301(a) of the LMRA.

4.     I graduated from Tulane University School of Law in June of 1980 and was admitted to the Bar of the State of California in December of 1989.  I am also admitted to practice in the United States District Court, Central District of California.

5.     Since 1990, I have practiced law in Los Angeles specializing in employment and labor law.

6.     In or about May 1997, I became Associate Counsel, Legal Services, at the WGAW in Los Angeles.  I represent the WGAW and writers in the entertainment industry in a wide variety of arbitration cases arising under the collective bargaining agreement with the Alliance of Motion Picture and Television Producers.

7.     On April 7, 2008, Arbitrator Joel Grossman signed the Arbitrator's Award ("Award") against Respondents Carlson Entertainment Group, LLC d/b/a Carlson Entertainment Group and Bruce Carlson ("Respondents") pursuant to the 2004 Writers Guild of America Theatrical and Television Basic Agreement ("MBA") arising out of a dispute that Petitioner and Respondents submitted to the Arbitrator and served upon the Respondents and Petitioners.

W:\Compensation cases\Co06036\PTC Notice Memo Declaration.doc

8.    Attached hereto as Exhibit A is a true and correct copy of Articles 10, 11 and 12 of the MBA, dealing with grievance and arbitration pursuant to the MBA as well as enforcement of arbitration awards obtained pursuant thereto. Attached as Exhibit B is a true and correct copy of the Arbitration Award issued by Arbitrator Joel Grossman on April 7, 2008 and served on Respondents at that time. Pursuant to Article 17 of the MBA, Pension and Health contributions are set at 14.5% of all compensation paid or to be paid thereunder and, in accordance with the WGAW Health Fund and Pension Plan Trust Fund, interest on all unpaid contributions is set at .83% per month on all unpaid principal amounts until paid in full.

9.    Attached as Exhibit C is a true and correct copy of the demand for payment and satisfaction of the Arbitration Award that were mailed to Respondents on or about September 11, 2008. The amounts stated therein are the amounts stated and/or referred to in the Arbitration Award and which are due and owing thereunder.

10. I have reviewed my activities on behalf of the Petitioners in this matter. In calculating the hours set forth herein, I have considered my time in preparing this declaration, the Motion, travel, and court time.

11.    I have calculated the reasonable market value of my services by taking the prevailing hourly billing rate of private attorneys who specialize in labor relations law in Los Angeles and placing my value within the lower range of that scale. Based upon those rates, a reasonable rate for attorneys of my background and experience in labor relations law is no less than $250.00 per hour. The WGAW is also entitled to the $350.00 fee that this Court collects for filing the Motion.

12.    Fees awarded in this action will not inure to me personally but will be paid to the WGAW, a non-profit membership corporation and certified labor organization. No part of the monies recovered will be used for non-litigation activities of the WGAW.

W:\Compensation cases\Co06036\PTC Notice Memo Declaration.doc

13.   The compensation to which the WGAW is entitled for my services is $1,500.00, which was computed as follows: 6 hours x $250.00 = $1,500.00. The WGAW is also entitled to the $350.00 fee that this Court collects for filing the Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Los Angeles, California, this 31st day of August, 2009.

Thomas J. Coleman
Attorney for Petitioners

W:\Compensation cases\Co06036\PTC Notice Memo Declaration.doc

# EXHIBIT "A"

# 2004 WRITERS GUILD OF AMERICA THEATRICAL AND TELEVISION BASIC AGREEMENT — ABC, CBS AND NBC

## Articles 10, 11 and 12

of such issue. Arbitrability shall first be determined prior to the arbitrator's proceeding with a

Case 2:09-cv-06582-AHM-RJW    Document 1    Filed 09/10/2009    Page 13 of 50

## ARTICLE 8 - CREDITS FOR SCREEN AUTHORSHIP (GENERAL)

The Company agrees that credits for screen authorship shall be given only pursuant to the terms of and in the manner prescribed in the applicable Schedule A attached hereto and by this reference incorporated herein, with respect to credits for screen authorship finally determined during the term hereof, and with respect to credits for screen authorship finally determined after the expiration of the term hereof involving material written during the term hereof or during the term of a prior collective bargaining agreement between the Company and the Guild; provided, however, that any such credits determined during the term of a successor collective bargaining agreement between the Company and the Guild shall be determined pursuant to the terms of such successor collective bargaining agreement.

## ARTICLE 9 - MINIMUM TERMS (GENERAL)

The terms of this Basic Agreement are minimum terms; nothing herein contained shall prevent any writer from negotiating and contracting with any Company for better terms for the benefit of such writer than are here provided, excepting only credits for screen authorship, which may be given only pursuant to the terms and in the manner prescribed in Article 8. The Guild only shall have the right to waive any of the provisions of this Basic Agreement on behalf of or with respect to any individual writer.

## ARTICLE 10 - GRIEVANCE AND ARBITRATION

### A.    MATTERS SUBJECT TO GRIEVANCE AND ARBITRATION (GENERAL)

Except as otherwise specifically provided in this Article or elsewhere in this Basic Agreement, the following matters shall be submitted to grievance and thereafter to arbitration as hereinafter provided, and no other matters shall be submitted to grievance or arbitration:

1.    Any dispute between the Guild and the Company concerning the interpretation of any of the terms of this Basic Agreement and the application and effect of such terms as determined by an interpretation thereof.

2.    Any alleged breach of any of the terms or provisions of this Basic Agreement by the Guild or the Company.

3.    Any claim by the Guild and a writer, on the one hand, against the Company, on the other hand, for unpaid compensation under the writer's individual employment agreement or loan-out agreement with the Company, or for payment under a purchase agreement with the Company in the case of a professional writer, excluding, however, any claim not related to the writer's services as a writer or not related to the sale of literary material. (Claims for compensation or payment under an employment, loan-out or purchase agreement shall be referred to hereafter as "**compensation claims**" or "**claims for compensation**.")  Notwithstanding the foregoing, the grievance committee and arbitrator shall not have jurisdiction to render an award for compensation or payment exceeding the sum of four hundred thousand dollars ($400,000.00) for a theatrical or television employment or purchase. (This amount is herein referred to as the "*jurisdictional maximum*.")  If a compensation claim exceeds the jurisdictional maximum, the claim may nevertheless be submitted to grievance and/or arbitration, but by such submission the Guild and writer waive any award exceeding the jurisdictional maximum and shall have no further claim or right with respect to any amount in excess of the jurisdictional maximum. A claim for compensation cannot be split nor may more

---

than one (1) grievance or arbitration proceeding be brought for the purpose of avoiding the jurisdictional maximum.

4.   In any grievance or arbitration proceeding with respect to a claim for compensation brought under subparagraph 3. of this Article 10.A., the Company may, but need not, assert any and all defenses, including defenses based on an alleged right of suspension or termination, and any counterclaim or setoff (hereinafter referred to as "**cross-claim**"). A cross-claim is either mandatory or permissive. A mandatory cross-claim is one arising out of or related to the pending claim for unpaid compensation. A permissive cross-claim is any other cross-claim by the Company against the writer. Provided that the Company has obtained knowledge of the facts upon which the cross-claim is based, the Company shall assert any and all mandatory cross-claims in any arbitration proceeding involving a compensation claim. If the amount claimed by the Company in a cross-claim exceeds the jurisdictional maximum of four hundred thousand dollars ($400,000.00), the Company shall have the option of submitting such cross-claim to grievance and (whether or not submitted to grievance) to arbitration or to institute an action at law or in equity with respect to such cross-claim. The Company may, but need not, assert any permissive cross-claim.

5.   Any claim of overpayment by a Company under Article 11.A.9. of this Basic Agreement.[2]

## B.   LIMITATION OF MATTERS SUBJECT TO GRIEVANCE AND ARBITRATION

1.   Except as otherwise provided in this Basic Agreement, disputes under individual employment agreements, loan-out agreements or under purchase agreements with professional writers, involving:

   a.   Company's rights of suspension and termination,

   b.   Company's right to seek or obtain injunctive relief or specific performance,

   c.   any of the warranties or grants of rights made by the writer, or

   d.   any of the rights of the Company to any literary material,

   shall not be subject to grievance or arbitration (except as provided to the contrary in Article 16), and the Company reserves all of its legal and equitable rights and remedies with respect thereto. Any decision in grievance or award in arbitration purporting to determine or affect any of the aforementioned matters shall, to that extent, be of no force or effect whatsoever; provided, however, that if the Company asserts in any grievance or arbitration any defense or cross-claim involving or based upon the alleged exercise of a right of suspension or termination, the same shall be determined in such grievance and arbitration proceeding.

2.   The grievance committee and the arbitrator shall have jurisdiction to determine only such disputes as are submitted for grievance or arbitration under this Basic Agreement, subject to the limitations upon the powers of said grievance committee and arbitrator under this Basic Agreement. Neither the grievance committee nor the arbitrator shall have the power or jurisdiction to reform, amend or extend the express terms and provisions of this Basic Agreement or of any employment agreement, loan-out agreement or purchase agreement.

---

[2]   Articles 10.A.5. and 11.A.9. replace Article 13.C. of the 1973 Basic Agreement.

**ARTICLE 10 - GRIEVANCE AND ARBITRATION**
B - LIMITATION OF MATTERS SUBJECT TO GRIEVANCE AND ARBITRATION

Notwithstanding anything else contained in this Article, the following matters shall be submitted to arbitration but not to grievance:

1. Any dispute as to whether the arbitrator has jurisdiction or whether any matter is arbitrable, provided, however, that the arbitrator may not order an arbitration of any matter not arbitrable as provided above.

2. Any dispute concerning the credit provisions of this Basic Agreement. Such disputes are subject to the procedures set forth in Article 11.E. of this Basic Agreement.

3. Any dispute concerning separation of rights under the provisions of subparagraph 6. of Article 16.A. of this Basic Agreement.

4. Any dispute concerning allocation of receipts under Article 15.A.3.a. of this Basic Agreement.

5. Any dispute concerning Article 16.A.8. which is subject to the expedited arbitration procedure in Article 11.F.

## D. REFUSAL TO ARBITRATE

A failure or refusal by any party to go to grievance on a matter subject to grievance or to arbitrate an arbitrable matter, including disputes as to jurisdiction and arbitrability pursuant to this Article 10, is a substantial breach of this Basic Agreement. A failure or refusal by any party to go to grievance on a matter subject to grievance or to arbitrate an arbitrable matter shall not limit, impair or divest the jurisdiction and powers of the grievance committee or arbitrator provided notice of grievance or arbitration has been served as provided herein. Grievance and arbitration may proceed despite the failure of a party to appear and the grievance committee or arbitrator may enter an award against such a party.

## E. REFERENCES

All references in Articles 10, 11 and 12 to individual employment agreements, loan-out agreements or purchase agreements only refer to such agreements as are subject to this Basic Agreement.

# ARTICLE 11 - GRIEVANCE AND ARBITRATION RULES AND PROCEDURES

## A. GENERAL RULES

Unless otherwise provided in this Article 11 or elsewhere in this Basic Agreement, the rules and procedures for grievance and arbitration shall be as follows:

1. Parties

a. In any grievance or arbitration concerning any claim by a writer for compensation under Article 10.A.3., the Guild and the writer involved shall be jointly a party and may be represented by joint counsel. In any grievance or arbitration concerning such a claim by any loan-out company, the loan-out company also shall be jointly a party and may be represented by joint counsel. The claim shall be initiated by the Guild on behalf of the writer and the loan-out company, if any.

b. Except as provided in subparagraph a. above, only the Company and the Guild shall be parties.

c. [Renumbered as Article 11.B.3. and deleted here.]

The party commencing a claim in grievance or arbitration is sometimes referred to here s complainant. The party against whom s grievance or arbitration is commenced is sometimes referred to herein as respondent. Use of such terms in the singular shall be deemed to include the plural.

e.   The grievance and arbitration provisions shall apply to disputes with respect to purchase agreements with professional writers to the same extent but no greater than they are applicable to disputes involving employed writers.

f.   As used in Articles 10, 11 and 12 of this Basic Agreement, the term "writer" shall be deemed to include the plural, the writer's loan-out company if any (as defined in Article 3 of this Basic Agreement) and, in the case of a purchase agreement, a professional writer (as defined in Article 1 of this Basic Agreement).

2.   Time Limits

a.   Proceedings for grievance (or arbitration, to the extent a party is required to initiate arbitration without invoking a grievance proceeding) of a claim relating to actual or alleged television employment or purchase shall be commenced no later than two (2) years after the party bringing the grievance or arbitration proceeding (whether it is the Company, Guild or the writer) has obtained knowledge of the facts upon which the claim is based. Proceedings for grievance (or arbitration, to the extent a party is required to initiate arbitration without invoking a grievance proceeding) of a claim relating to actual or alleged theatrical employment or purchase shall be commenced no later than eighteen (18) months after the party bringing the grievance or arbitration proceeding (whether it is the Company, Guild or the writer) has obtained knowledge of the facts upon which the claim is based.

b.   In any event, grievance and arbitration proceedings shall commence not later than four (4) years after the occurrence of the facts upon which the claim is based. An arbitration may be commenced prior to initiation or conclusion of a grievance proceeding, if it reasonably appears that the grievance proceeding will not be concluded in sufficient time to permit the arbitration proceeding to be commenced in time.

c.   With respect to separation of rights in television literary material, Company may accelerate the applicable limitation of time by serving notice on the Guild, after the literary material is completed, that the writer concerned does not have separation of rights in such material and by furnishing with such notice copies of all literary material and contracts upon which the Company's position in such notice is based. The Guild must respond within ninety (90) days from the date such notice is received or the claim to separation of rights is waived on behalf of the writer and the Guild.

d.   If grievance or arbitration proceedings are not commenced within the applicable time period specified in this Article 11, such claim shall be deemed to be waived. All time limits provided in Article 11 may be extended by mutual agreement of the parties to the dispute.

e.   It is the intent of the Guild and the Company that all arbitration awards should be rendered within sixty (60) days following the close of the arbitration hearing or submission of post-hearing briefs, whichever is later. However, the arbitrator's failure to render an award within such period shall not deprive him/her of jurisdiction over the dispute or render the award invalid because it is made thereafter.

---

ARTICLE 11 - GRIEVANCE AND ARBITRATION RULES AND PROCEDURES
A - GENERAL RULES

Except as otherwise provided in this paragraph, all arbitrations shall be in Los Angeles, absent agreement of the parties. At the election of Writers Guild of America, East, the arbitration shall be in New York if a majority of the witnesses required for the arbitration hearing reside regularly in and around the New York area; provided, however, if any Company which is a party to the arbitration has its headquarters for the production of motion pictures in California, such arbitration shall be held in Los Angeles. Any dispute as to where the arbitration should be held shall be determined by an arbitrator in Los Angeles, selected in accordance with the procedures set forth in Article 11.C.2., and said arbitrator shall be disqualified from hearing the merits of the dispute. Said arbitrator shall take testimony by telephone from distant witnesses when requested to do so by either party. If the arbitrator determines that the arbitration shall be heard in New York, the arbitrator assigned to hear the merits of the dispute shall be selected from the New York list of arbitrators set forth in Article 11.C.2.

The selection of the situs of the hearing room within the appropriate city shall be by mutual agreement of the Company and the Guild. If there is no such agreement, those parties will alternate in selecting the hearing room, with the party making the selection supplying the room at no charge to the other.

4.    Award

The grievance committee and the arbitrator may make any appropriate award permitted herein. Such award shall be in writing and shall be limited as provided in this Basic Agreement. Subject to the provisions of this Basic Agreement, the award shall be final and binding upon the parties to the proceeding, whether participating in the proceeding or not, and in any grievance or arbitration proceeding in which the writer involved is not a party. Any interpretation of this Basic Agreement made in such award shall be final and binding on such writer.

5.    Costs

Each party shall pay the costs of its representatives on the grievance committee. The fee and expenses of the arbitrator shall be shared equally, unless otherwise provided by the arbitrator. The arbitrator may require a court reporter and a transcript, and if so required, the cost thereof shall be shared equally. All other costs and expenses of grievance and arbitration shall be borne by the party incurring the same.

6.    Notices

a.    All written notices referred to in this Article 11 commencing a grievance or arbitration or alleging a cross-claim shall be sent by registered or certified mail or by personal delivery and shall set forth the particulars thereof. If the moving party is unable to effect service in this manner, service then may be effected by first class mail, postage prepaid, to the address for service last designated in writing by the Company, together with publication in *Daily Variety, The Hollywood Reporter, The Los Angeles Times* and *The New York Times*. All other written notices may be served by first class mail, postage prepaid, unless otherwise specifically provided herein.

b.    All notices sent by the Guild to the Company shall be sent to the address designated by the Company in writing to the Guild at the time Company becomes signatory to the Basic Agreement. Should Company change its address for the purpose of receiving notices relating to grievance or arbitration, the Company shall notify the Executive Director of Writers Guild of America, west, Inc. and the Executive Director of Writers Guild of America, East, Inc. of such new address, which shall then be substituted for the prior address.

c. Unless otherwise designated by Company in a written notice to the Guild, all notices to be served upon the Company shall be addressed to the attention of an office of the Company, or to its Labor Relations Department. If the Company maintains an office in Los Angeles, California or its vicinity, all such notices shall be sent to said office.

d. A petition to confirm, modify or vacate, as the case may be, an arbitration award in any court of competent jurisdiction shall be served upon the respondent by registered or certified mail or by personal delivery. If the petitioner is unable to effect service in this manner, service then may be effected by first class mail, postage prepaid, to the address for service last designated in writing by the Company, together with publication in *Daily Variety, The Hollywood Reporter, The Los Angeles Times* and *The New York Times.*

7. Conduct of Proceedings

Except as set forth elsewhere herein, the grievance committee and the arbitrator shall adopt such rules of procedure and shall conduct proceedings in such manner as they shall determine to be proper; provided, however, that each party to any grievance or arbitration shall be afforded a reasonable opportunity to present evidence and argument before the grievance committee and the arbitrator.

All hearings, deliberations and proceedings of the arbitrator and the grievance committee shall be closed to the public and shall be absolutely privileged. Only interested parties, their representatives and witnesses may attend. All communications to and from the arbitrator or the grievance committee shall likewise be absolutely privileged. Unless the Company objects, the arbitrator will send a copy of the award to ABC, CBS and NBC. The Guild shall have access to those awards.

8. Claims for Compensation, Cross-Claims and Defenses

Subparagraphs a. through e. of this subparagraph 8. relate to compensation claims, cross-claims and defenses covered by Articles 10.A.3. and 10.A.4. of this Basic Agreement.

a. The grievance committee and arbitrator shall have no jurisdiction to determine or affect any claim relating to services in connection with any theatrical or television motion picture other than the theatrical or television motion picture as to which the compensation claim is asserted unless a defense or cross-claim is asserted with respect to another theatrical or television motion picture.

b. A decision made or award rendered in grievance or arbitration of a claim for compensation shall be limited to deciding or awarding what compensation, if any, is due the writer from the Company and what amount, if any, is due the Company from the writer on account of any cross-claim asserted by the Company in such grievance or arbitration.

c. If a claim for compensation under Article 10.A.3. of this Basic Agreement is submitted to grievance or arbitration, any claim of a breach of this Basic Agreement arising out of or connected with said claim must, to the extent permitted by the Basic Agreement, be submitted for grievance and arbitration together with the claim for compensation, provided that the Guild or the writer has obtained knowledge of the facts upon which said claim of breach is based. Failure to so submit such claim shall constitute a waiver of any and all rights to assert such claim thereafter.

d. The institution of any action in court by the Company shall not stay an arbitration proceeding brought by the Guild and writer for compensation, nor shall any such grievance or arbitration proceeding stay any action instituted by the Company

upon any matter Company is not required to submit to grievance or arbitration as
Case 2:09-cv-06582-AHM-RSL/or cross-claim whether filed 09/10/2009 instituted prior to the
submission of the compensation claim to grievance or arbitration.

e. Cross-claims must be submitted to grievance or arbitration by serving written notice on the complainant, by certified or registered mail, setting forth the particulars thereof.

9. **Overpayments**

If the Company claims that it has made an overpayment to a writer of any compensation provided for in this Basic Agreement or in any prior collective bargaining agreement between the Company and the Guild (*i.e.*, minimum compensation, residuals and other compensation provided for in this Basic Agreement or any other such collective bargaining agreement (hereinafter called "MBA compensation")) or of any compensation provided for in an employment or loan-out contract with a writer or an option agreement subject to the MBA or a purchase agreement with a professional writer not in excess of the applicable jurisdictional maximum of four hundred thousand dollars ($400,000.00) as set forth in Article 10.A.3. above (hereinafter called "arbitrable overscale compensation"), and if the Company desires to offset such payment against other compensation payable to such writer, the Company shall advise the Guild thereof in writing setting forth the particulars of such claim of overpayment. If the Guild requests that the question of whether the Company has overpaid MBA compensation or arbitrable overscale compensation to the writer be submitted to grievance and arbitration, such request shall be made within seven (7) days after such notice from the Company to the Guild. If the Guild does not make a timely request, the Company may proceed with the offset, subject to all of the legal rights and remedies of the writer. If the Guild does make a timely request, then pending the outcome of such grievance and arbitration, the Company agrees that it will not apply the offset, but will pay the amount it desires to apply as an offset to the Guild. The Guild shall then promptly deposit the amount so paid in a separate interest-bearing trust account until it is determined in such grievance and arbitration proceeding whether there was in fact an overpayment of MBA compensation or arbitrable overscale compensation, as the case may be. The grievance and arbitration shall involve only the question of whether there was in fact an overpayment of such compensation, and the amount thereof, and if it is determined that there was in fact an overpayment of such compensation, the right of offset is recognized. Upon conclusion of the arbitration, the payments into such account, together with applicable interest, shall be paid to the Company or to the writer in accordance with the arbitration decision. The parties shall cooperate in obtaining a speedy determination of the grievance and arbitration. As to any claimed right of offset with respect to any alleged overpayments of monies other than MBA compensation or arbitrable overscale compensation, the Guild and the Company reserve their respective rights and contentions.

10. **Withdrawal of Services**

Notwithstanding any provision of any personal service contract (including a memorandum agreement) or of the MBA to the contrary, it shall not be a violation thereof for the Guild or any employee (at the direction of the Guild) to withhold services from the Company if the Company fails or refuses to abide by the final award of an arbitrator for any reason whatsoever.

11. Any grievance and/or arbitration concerning a dispute arising under a prior MBA or a writer's individual employment agreement, loan-out agreement, option agreement or purchase agreement subject to a prior MBA shall be subject to the following grievance and arbitration rules and procedures as set forth in the MBA in effect at the time the grievance or arbitration is initiated:

a. The lists of arbitrators;

    c.    A party's unilateral right to waive second step grievance;

    d.    Use of a sole disinterested arbitrator rather than a tripartite arbitration panel;

    e.    Respondent's written statement of position prior to an arbitration hearing;

    f.    Methods of effecting service of grievance notices, arbitration claims, cross-claims and notices, and petitions to confirm, modify or vacate an arbitration award;

    g.    Arbitration of disputes concerning tri-Guild residuals audits as set forth in the Sideletter to Article 11;

    h.    Expedited arbitration of residuals disputes under Article 11.G.; and

    i.    Expedited arbitration of reacquisition disputes under Article 11.F.

The parties agree that the provisions of this Article 11.A.11. shall not be construed to render a dispute subject to grievance and/or arbitration hereunder if that dispute was not subject to grievance and/or arbitration under such prior MBA. The parties further agree that to the extent a claim of overpayment as described in Article 11.A.9. of this Agreement or a "cross-claim" may lie, the provisions of this Article 11.A.11. also shall apply.

**B.    GRIEVANCE**

1.    Step One - Informal Conference

Prior to submitting to grievance any matter properly a subject thereof, an authorized representative of the Guild and an authorized representative of the Company will meet in a good faith attempt to settle the dispute. If the representatives of the parties shall fail to settle the dispute within fourteen (14) days after the matter is first brought to the attention of the respondent, then the dispute may be referred to Step Two Grievance.

2.    Step Two - Grievance

    a.    Commencement of Grievance

Complainant shall set out the nature of its claim in writing, and serve a copy ("grievance notice") thereof upon respondent by certified or registered mail. Respondent may, but need not, reply in writing, setting forth its position. The parties shall attempt to agree upon a mutually satisfactory date to convene a grievance committee and hold a grievance hearing, but if no mutually agreeable date is chosen, respondent may, within five (5) days after receipt of the grievance notice, designate by written notice to complainant a date upon which the grievance committee shall convene to hold the grievance hearing. Such date shall be no earlier than fifteen (15) nor later than thirty (30) days after receipt of the grievance notice. If respondent fails or refuses to designate such a date, complainant may designate the date for such meeting, such date to be not earlier than fifteen (15) nor later than thirty (30) days after service of the grievance notice.

    b.    Grievance Committee

The grievance committee shall consist of three (3) representatives chosen by respondent and three (3) representatives chosen by complainant. Either party

committee will, by majority vote, select its chairman. By mutual agreement, the grievance committee may consist of five (3) representatives chosen by respondent and two (2) representatives chosen by complainant.

    c.    Grievance Hearing

The grievance committee thus designated shall meet upon the date selected pursuant to the procedure described above, and shall consider and attempt to resolve the dispute brought before it. The hearing shall be conducted in an orderly fashion, but rules of evidence and technicalities of procedure shall not be controlling. It is the intent of this Basic Agreement that the committee members shall use their good faith, best judgment and common sense, as persons experienced in the motion picture and television industry, in attempting to resolve the dispute brought before it. No matter shall be considered by the grievance committee unless a quorum is present. A quorum shall consist of six (6) members. If any four (4) members of the committee shall agree on a decision, such decision shall be final and binding upon the parties to the proceedings and any interpretation of this Basic Agreement made in such decision shall also be binding upon the writer or writers involved. If no decision is agreed upon, then in any subsequent arbitration or other proceeding, no reference shall be made to the grievance proceeding or to any statements or discussions therein, or to the failure of the grievance committee to settle the dispute.

    d.    Unresolved Grievance

If either party fails to designate its representatives within ten (10) days after notice of grievance is served, or if the committee shall fail to meet and commence hearings on the date selected in accordance with the procedures described above, or if four (4) members of the committee shall fail to concur in a decision, or if a grievance hearing is waived by one (1) of the parties hereto, or in any event if the dispute has not been settled by the committee or otherwise within forty-five (45) days after the mailing of the grievance notice, then either party may submit such matter to arbitration.

    3.    Waiver of Grievance [appeared as Article 11.A.1.c. in predecessor Agreements].

Either party may, by written notice to the other party, waive grievance. In such event, the dispute shall be submitted directly to arbitration.

## C.    ARBITRATION

    1.    Initiation of Proceedings

A dispute which is subject to grievance proceedings shall not be subject to arbitration, except as provided in subparagraph B.2.d. or subparagraph B.3. of this Article 11. An arbitration shall be initiated by complainant by written notice, setting forth the particulars of the claim, to be sent to respondent in accord with the procedures described in Article 11.A.6.a. of this Basic Agreement. Respondent will provide complainant with a written statement of its position not later than ten (10) days prior to the date of the hearing.

    2.    Selection of Arbitrator

The arbitrator shall be a disinterested person. The parties shall in good faith attempt to mutually agree upon an arbitrator within ten (10) business days after respondent's receipt of the arbitration notice. The complainant may extend this ten (10) day period upon written notice to respondent(s) at the time the arbitration claim is served. Such extension is deemed effective at that time absent an objection by respondent(s). In addition, the extension will no longer be deemed effective if respondent(s) gives

subsequent written notice to complainant in which case the parties shall in good faith attempt to select an arbitrator within thirty (30) days after complainant's receipt of notice from respondent(s). With respect to arbitration claims served on or after November 1, 2004, if the complainant has failed to take any action to select the arbitrator (either by mutual agreement or the applicable Strike Process), or has failed to withdraw the claim with or without prejudice, for a period of eighteen (18) months after service of the claim on respondent(s), such claim shall be deemed to be waived.

Should the parties fail to agree on an arbitrator, the arbitrator shall be selected by the "Strike Process" as follows:

a.   The arbitrators listed in Article 11.C.2.e.(3) shall constitute the lists of arbitrators.

b.   On a Company-by-Company basis, the Guild and the Company shall alternate on a case-by-case basis in first striking a name from the applicable list of arbitrators (Los Angeles or New York). Thereafter, the other party shall "strike" a name from the list. The parties shall continue to alternate in striking names from the list, until one (1) arbitrator's name remains.

c.   The arbitrator whose name remains (after the Strike Process is completed) shall be the arbitrator.

d.   The "Strike Process" shall commence within two (2) business days following completion of the ten (10) business day period referred to in subparagraph 2. above and must conclude no later than three (3) business days following completion of the ten (10) day period referred to in subparagraph 2. above.

e.   In the event that one of the parties fails to participate in the Strike Process, or fails to strike in order and/or timely, the other party may thereupon select the arbitrator to hear the matter.

(1)   [Deleted.]

(2)   If more than one Company is a party, then the Company which is the real party in interest shall participate in the striking process with the Guild. In the event that such Companies cannot agree on which of them is the real party in interest, then such Companies shall determine by lot which Company shall participate in the striking process with the Guild.

(3)   The authorized lists of arbitrators approved by the parties hereto are as follows:

LOS ANGELES

| | |
|---|---|
| Sara Adler | Anita Christine Knowlton |
| Tom Christopher | Michael Rappaport |
| Douglas Collins | Lionel Richman |
| Dixon Dern | Tom Roberts |
| Edna Francis | Sol Rosenthal |
| Joe Gentile | Robert Steinberg |
| Joel Grossman | Barry Winograd |
| Fredric R. Horowitz | John Zebrowski |
| Edgar A. Jones, Jr. | |

### NEW YORK

| | |
|---|---|
| Maurice Benewitz | George Nicolau |
| Noel Berman | Joan Parker |
| Howard Edelman | Janet Spencer |
| Susan MacKenzie | |

Additional names may be added from time to time during the term of the contract by mutual agreement of the parties, provided that each panel shall consist of an odd number of arbitrators at all times.

3.    Substitution of Arbitrators

If the arbitrator selected cannot serve, a substitute shall be selected in accordance with subparagraph 2. above.

4.    Notice of Hearing

The arbitrator or, at his/her request, one of the parties shall give written notice to the parties of the time and place of the arbitration hearing. In fixing such date, the arbitrator shall consult the parties and shall consider the time reasonably necessary for the parties to prepare their cases.

5.    Exchange of Information

The parties will cooperate in the exchange of information prior to the hearing regarding the expected utilization of documents and witnesses, including the exchange of lists of witnesses and copies of documents to be utilized. Such utilization shall not be precluded because such exchange did not take place.

6.    Hearing

a.    The arbitrator may, upon a showing of good cause, continue the hearing.

D.    ARBITRATION OF DISPUTES WHICH INVOLVE QUESTIONS OF JURISDICTION OR ARBITRABILITY

An objection to jurisdiction or arbitrability shall first be determined by the arbitrator prior to proceeding with a hearing on the merits. If the arbitrator determines that there is jurisdiction and that the dispute is arbitrable, the arbitrator shall proceed to a decision on the merits; provided, however, that the party contesting arbitration or jurisdiction shall not, by proceeding to a determination of the merits of such arbitration, be deemed to have waived its position that the dispute is not arbitrable or that the arbitrator does not have jurisdiction. If the arbitrator rules he has no jurisdiction over the dispute or that the dispute is not arbitrable, then each party is relieved of its obligation to further delay taking any action at law or in equity which it may desire to take.

E.    **ARBITRATION OF DISPUTES CONCERNING CREDIT PROVISIONS**

A dispute concerning the credit provisions of this Basic Agreement shall be submitted to an expedited arbitration proceeding governed by the following rules:

1.    The Guild shall act on behalf of itself and the writer.

2.    Within twenty-four (24) hours after the Guild or the Company serves written notice upon the other concerning a dispute involving a credit provision, an authorized representative of the Guild and an authorized representative of the Company will make a good faith attempt to settle or resolve the dispute.

3.    In the event the parties shall fail to meet or shall otherwise fail to settle or resolve the dispute within twenty-four (24) hours after the twenty-four (24) hours provided in subparagraph 2. above, the dispute shall be submitted to arbitration to be commenced not later than five (5) business days after the service of the written notice provided for in subparagraph 2. above.

4.    The dispute shall be submitted to a sole neutral arbitrator mutually selected from the authorized list of arbitrators approved by the parties hereto as follows:

LOS ANGELES

| | |
|---|---|
| Sara Adler | Anita Christine Knowlton |
| Tom Christopher | Michael Rappaport |
| Douglas Collins | Lionel Richman |
| Dixon Dern | Tom Roberts |
| Edna Francis | Sol Rosenthal |
| Joe Gentile | Robert Steinberg |
| Joel Grossman | Barry Winograd |
| Fredric R. Horowitz | John Zebrowski |
| Edgar A. Jones, Jr. | |

ARTICLE 11 - GRIEVANCE AND ARBITRATION RULES AND PROCEDURES
E - ARBITRATION OF DISPUTES CONCERNING CREDIT PROVISIONS

| Maurice Benewitz | George Nicolau |
| Noel Berman | Joan Parker |
| Howard Edelman | Janet Spencer |
| Susan MacKenzie | |

Additional names may be added from time to time during the term of the contract by mutual agreement of the parties, provided that each panel shall consist of an odd number of arbitrators at all times.

In the event the parties are unable, within forty-eight (48) hours (not including weekends or holidays) after respondent's receipt of the written notice provided for in subparagraph 2. above, to agree upon an arbitrator from the above list or otherwise, the arbitrator shall be selected by use of the following "strike process:"

a.    The arbitrators listed in this Article 11.E.4. shall constitute the lists of arbitrators.

b.    On a Company-by-Company basis, the Guild and the Company shall alternate on a case-by-case basis in first striking a name from the applicable list of arbitrators (Los Angeles or New York).  Thereafter, the other party shall "strike" a name from the list.  The parties shall continue to alternate in striking names from the list until one arbitrator's name remains.

c.    The arbitrator whose name remains (after the strike process is completed) shall be the arbitrator, so long as the arbitrator is a disinterested person.

d.    The "strike process" shall commence within twenty-four (24) hours (not including weekends or holidays) after the period for mutual agreement has expired and shall be completed within forty-eight (48) hours (not including weekends or holidays) after the period for mutual agreement has expired.

e.    If one of the parties fails to participate in the strike process, or fails to strike in order and/or timely, the other party may thereupon select a neutral arbitrator to hear the matter.

f.    If more than one Company is a party, then the Company which is the real party in interest shall participate in the strike process with the Guild.  In the event that such Companies cannot agree on which of them is the real party in interest, then such Companies shall determine by lot which Company shall participate in the strike process with the Guild.

5.    Notwithstanding anything in this Basic Agreement to the contrary, the arbitrator shall have jurisdiction and power to award damages, to order the Company to withdraw, cancel, change, or re-do advertising materials already issued or prepared, to require the Company to re-do any film titles, and to order any other reasonable relief the arbitrator deems appropriate in the circumstances, whether relating to credit on the screen, advertising or otherwise.  Any award rendered by the arbitrator shall be binding on the parties and upon the writer.

6.    Any or all time limits set forth herein may be waived by the mutual consent of the parties.

F.   **EXPEDITED ARBITRATION OF CERTAIN DISPUTES CONCERNING REACQUISITION OF UNPRODUCED LITERARY MATERIAL (THEATRICAL)**

1.   a.   **Disputes Subject to Expedited Arbitration Procedure**

The following procedure applies only to arbitrable disputes between the Guild and the Company concerning the interpretation or application, or alleged breach, of any provision of Article 16.A.8. of this Basic Agreement or any predecessor WGA Basic Agreement as to which the initial written notice of the writer's desire or intent to reacquire is received by the Company on or after May 2, 1998.

   b.   **Parties**

Only the Guild and the Company shall be parties to an Article 11.F. arbitration proceeding.  The Guild shall act on behalf of itself and the writer.

2.   **Right to Invoke**

Either the Guild or the Company shall have the right to invoke this expedited arbitration procedure when there is a likelihood of irreparable harm in connection with the proposed reacquisition if regular arbitration procedures were used.  For purposes of Article 11.F., it is agreed that "irreparable harm" means an event or occurrence that cannot be undone or an opportunity or situation that, once lost or foregone, is unlikely to be revived or recaptured.  The burden of proof shall be on the moving party to show that use of the expedited procedure is appropriate under the provisions of this subparagraph 2.

3.   **Commencement of Proceedings**

Complainant shall initiate expedited arbitration proceedings by written notice, setting forth the particulars of the claim, to be sent to the respondent in accordance with the procedures described in Article 11.A.6.a. of the Basic Agreement.  Such notice shall be served within ten (10) business days after the moving party has obtained knowledge of the facts upon which the claim is based.  If expedited arbitration proceedings are not commenced within this time period, use of the expedited procedure shall be deemed waived.  When the WGA or the Company has initiated the Article 48.E. Hot Line procedure, the period of no more than seven (7) days used to attempt resolution of the dispute in this manner shall not be included in the computation of the ten (10) business day period under this subparagraph 3.

4.   a.   **Response or Objection to Expedited Claim**

The respondent shall respond to the claim or object to use of the expedited procedure within ten (10) business days after its receipt of the expedited arbitration claim.  If there is no objection to the procedure, the respondent will provide to complainant a written statement of its position within the time specified in the preceding sentence and, upon selection, to the arbitrator.

   b.   **Objection to Expedited Procedure and Interim Ruling**

If the respondent has objected to use of the expedited procedure, the objection must describe the factual or other basis for its contention that use of the expedited procedure is not appropriate under the provisions of Article 11.F.2. The arbitrator (upon selection) may either convene an informal hearing by

ARTICLE 11 - GRIEVANCE AND ARBITRATION RULES AND PROCEDURES
F - EXPEDITED ARBITRATION OF CERTAIN DISPUTES CONCERNING REACQUISITION OF
UNPRODUCED LITERARY MATERIAL (THEATRICAL)

40

of the expedited procedure is appropriate.

The hearing will take place within three (3) business days following selection of the arbitrator. Each party may file hearing briefs, page limit to be set by the arbitrator, and may make closing arguments. There will be no post-hearing briefs. The arbitrator must inform the parties of his/her decision as to whether the expedited procedure was appropriately invoked within twenty-four (24) hours after conclusion of the hearing, to be followed by an interim ruling in writing.

5.    **Selection of an Arbitrator; Place of Hearing**

a.    The arbitrator shall be a neutral third party. The parties shall in good faith attempt to mutually agree upon an arbitrator within three (3) business days after the response, objection or failure to respond, but in no event later than expiration of the ten (10) business day period in Article 11.F.4.a. above. Should the parties fail to so agree, the arbitrator shall be selected by the "Strike Process" as follows:

(1)    The arbitrators listed in subparagraph (7) below shall constitute the lists of arbitrators.

(2)    On a respondent-by-respondent basis, the moving party and the respondent shall alternate on a case-by-case basis in first striking a name from the list of arbitrators. Thereafter, the other party shall "strike" a name from the list. The parties shall continue to alternate in striking names from the list, until one (1) arbitrator's name remains.

(3)    The arbitrator whose name remains (after the Strike Process is completed) shall be the arbitrator.

(4)    The Strike Process shall commence on the first business day following completion of the three (3) business day period referred to in subparagraph 5.a. above and must conclude by close of business that day.

(5)    In the event that one of the parties fails to participate in the Strike Process, or fails to strike in order and/or timely, the other party may thereupon select the arbitrator to hear the matter.

(6)    If there is more than one respondent, then the respondent which is the real party in interest shall participate in the strike process with the Guild. In the event that such respondents cannot agree on which of them is the real party in interest, then such respondents shall determine by lot which of them shall participate in the striking process with the Guild.

(7)    The authorized lists of arbitrators are as follows:

| | |
|---|---|
| Sara Adler | Anita Christine Knowlton |
| Tom Christopher | Michael Rappaport |
| Douglas Collins | Lionel Richman |
| Dixon Dern | Tom Roberts |
| Edna Francis | Sol Rosenthal |
| Joe Gentile | Robert Steinberg |
| Joel Grossman | Barry Winograd |
| Fredric R. Horowitz | John Zebrowski |
| Edgar A. Jones, Jr. | |

### NEW YORK

| | |
|---|---|
| Maurice Benewitz | George Nicolau |
| Noel Berman | Joan Parker |
| Howard Edelman | Janet Spencer |
| Susan MacKenzie | |

Additional names may be added from time to time by mutual agreement of the parties, provided that each panel shall consist of an odd number of arbitrators at all times.

**b.    Substitution of Arbitrators**

If the arbitrator selected cannot serve, a substitute shall be selected in accordance with subparagraph 5.a. above.

**c.    Choice of Two Arbitrators**

If there is to be a hearing on the respondent's objection to use of the expedited procedure, the parties have the option of selecting one arbitrator to rule on such objection and another arbitrator to determine the remaining issues in the case, both of whom shall be selected pursuant to this subparagraph 5.

**d.    Place of Hearing**

The place of the arbitration hearing shall be determined in accord with Article 11.A.3. of the Agreement.

**6.    Timeline; Citation of Expedited Arbitration Awards**

**a.    **The hearing on the merits of the claim shall commence within twenty (20) business days following the respondent's receipt of the

---

Case 2:09-cv-06582-AHM-RUL Document 1 Filed 09/10/2009 Page 29 of 50

The arbitrator or, at his/her request, one of the parties, shall give written notice to the other party of the time and place at which the arbitration hearing will commence. In fixing such date, the arbitrator shall consult the parties and shall consider the time reasonably necessary for the parties to prepare their cases. The arbitration shall take place as notified (or as continued) regardless of whether one (1) of the parties fails to participate.

**b.** The hearing on the merits of the claim shall conclude within ten (10) business days after its commencement, provided that the duration of the hearing is consistent with fundamental fairness in the arbitrator's sole judgment.

**c.** The parties may file post-hearing briefs within fifteen (15) business days following the close of the hearing. Either party's election to file a post-hearing brief will not preclude that party's right to make a closing argument so long as the hearing concludes within the time permitted in subparagraph 6.b. above.

**d.** Within ten (10) business days following either receipt of the parties' briefs, or the conclusion of the hearing if no briefs are filed, the arbitrator shall issue a written decision and award on the issues presented. The arbitrator's failure to meet the deadline shall not oust the arbitrator of jurisdiction. The arbitrator's determination of issues and award shall be final and binding upon the Company, the Guild and the writer or writers involved, whether participating in the proceeding or not.

Any award so rendered may be cited or offered into evidence by any party in another arbitration proceeding under this Basic Agreement, whether expedited or not.

**7.  Waiver of Time Limits**

Any or all of the time limits set forth in Article 11.F.6. may be waived by the mutual consent of the parties.

**8.  Right to Seek an Extension of Time Limit**

Upon the arbitrator's finding of good cause demonstrated by either party, the arbitrator may expand the time for conducting the hearing for a maximum of three (3) additional business days, and/or the time for filing post-hearing briefs for a maximum of three (3) additional business days. In making such a determination, the arbitrator shall take into account the position of a party opposing the extension that prejudice would result from the extension. The arbitrator shall advise the parties of his/her ruling on any request for an extension within forty-eight (48) hours after the request is made.

**9.  Choice of Arbitration Forum; Application of Other Arbitration Provisions**

Claims processed under this Article 11.F., which result in expedited arbitration awards on the merits of the issues presented, shall not be subject to adjudication in a judicial forum. The preceding sentence does not reduce or impair the rights of any party under Article 12.C., D., and E. of this Agreement.

In addition, once an expedited arbitration procedure is initiated, the provisions of Article 11.F. shall preclude arbitration under Article 16.A.6. to the extent that the issue(s) under Article 16.A.6. has (have) been decided in the expedited proceeding.

**10.    Remedies in the Arbitration Forum**

In an expedited arbitration proceeding under Article 11.F., the arbitrator is limited to providing remedies that are in the nature of equitable relief such as a declaration of the respective rights of the parties and specific performance.

If all issues in dispute concerning the reacquisition are not fully resolved in the expedited proceeding, the WGA or the Company may initiate a subsequent arbitration proceeding under the regular procedures in the Basic Agreement.

**11.    Legal Subcommittee**

The parties to this Basic Agreement shall establish a legal subcommittee to explore whether the expedited arbitration procedure in Article 11.F. should apply to other Article 16 disputes.  The subcommittee shall report its recommendations, if any, to the Contract Adjustment Committee (CAC).

**G.    ARBITRATION OF CERTAIN DISPUTES CONCERNING RESIDUALS PROVISIONS**

Notwithstanding any other provision of the MBA, a dispute concerning the residuals provisions of this Basic Agreement or a predecessor WGA Basic Agreement shall be submitted to an expedited arbitration proceeding if the respondent is not financially responsible, or it is likely that the respondent's assets will be depleted or transferred, such that in either case it is reasonable to believe that the respondent would be unable to satisfy its residuals liability if the dispute were processed through the grievance and/or arbitration procedures set forth in Articles 11.A. through 11.C., above.  This expedited proceeding will be governed by the following rules:

**1.    Invocation of Expedited Proceeding**

A Notice of Expedited Arbitration (so labeled by the claimant) shall be reduced to writing and delivered to the respondent.  The Notice of Expedited Arbitration shall include the name, address and telephone number of the claimant's representatives and the name of the person who represents the respondent, if known.  The Notice of Expedited Arbitration shall also set forth the particulars of the claim, including an allegation that the respondent is not financially responsible, or it is likely that the respondent's assets will be depleted or transferred, such that in either case it is reasonable to believe that the respondent would be unable to satisfy its residuals liability if the dispute were processed through the grievance and/or arbitration procedures set forth in Articles 11.A. through 11.C.

This expedited procedure is not available when the residuals obligation(s) at issue is (are) payable, guaranteed or assumed by a "Qualified Distributor," "Qualified Buyer" and/or a "Qualified Residuals Payor," except by mutual agreement.

**2.    Attempt to Settle Dispute**

Within seven (7) business days after the claimant serves written notice upon the respondent concerning an expedited arbitration proceeding, an authorized representative of the claimant and an authorized representative of the respondent will make a good faith attempt to settle or resolve the dispute.

**3.    Submission of Dispute to Arbitrator**

In the event the parties shall fail to meet or discuss the claim, or shall otherwise fail to settle or resolve the dispute within fifteen (15) business days after the respondent's

later than sixty (60) days after the respondent's receipt of the claim.

Case 2:09-cv-06582-AHM-PJW    Document 1    Filed 09/10/2009    Page 31 of 50

4.    **Place of Hearing**

All expedited arbitration hearings under this Paragraph G. shall be in Los Angeles, absent agreement of the parties to another situs.

5.    **Arbitrator Selection**

The dispute shall be submitted to a sole neutral arbitrator mutually selected from the authorized list of arbitrators as follows:

| | |
|---|---|
| Sara Adler | Anita Christine Knowlton |
| Tom Christopher | Michael Rappaport |
| Douglas Collins | Lionel Richman |
| Dixon Dern | Tom Roberts |
| Edna Francis | Sol Rosenthal |
| Joe Gentile | Robert Steinberg |
| Joel Grossman | Barry Winograd |
| Fredric R. Horowitz | John Zebrowski |
| Edgar A. Jones, Jr. | |

Additional names may be added from time to time during the term of the contract by mutual agreement of the parties, provided that each panel shall consist of an odd number of arbitrators at all times.

In the event the parties are unable, within ten (10) business days (not including weekends or holidays) after the respondent's receipt of the claim, to agree upon an arbitrator from the above list or otherwise, the arbitrator shall be selected by use of the following "strike process:"

a.    The arbitrators listed in this Article 11.G. shall constitute the list of arbitrators.

b.    On a Company-by-Company basis, the Guild and the Company shall alternate on a case-by-case basis in first striking a name from the list of arbitrators. Thereafter, the other party shall "strike" a name from the list.  The parties shall continue to alternate in striking names from the list until one arbitrator's name remains.

c.    The arbitrator whose name remains (after the strike process is completed) shall be the arbitrator, so long as the arbitrator is a disinterested person.

d.    The strike process shall commence within twenty-four (24) hours (not including weekends or holidays) after the period for mutual agreement has expired and shall be completed within forty-eight (48) hours (not including weekends or holidays) after the period for mutual agreement has expired.

e.    If one of the parties fails to participate in the strike process, or fails to strike in order and/or timely, the other party may thereupon select a neutral arbitrator to hear the matter.

of more than one Company is a party, then the Company which is the real party in interest will participate in the strike process with the Guild. In the event that such Companies cannot agree on which of them is the real party in interest, then such Companies shall determine by lot which Company shall participate in the strike process with the Guild.

6. **Award**

The arbitrator's written award shall be issued within sixty (60) calendar days from the end of the expedited arbitration hearing if closing argument is substituted for post-hearing briefs, or ninety (90) days following submission of post-hearing briefs. The arbitrator's failure to meet the deadline shall not oust the arbitrator of jurisdiction. The arbitrator's determination of issues and award shall be final and binding on all parties, whether participating in the hearing or not. The parties shall be so bound in any subsequent arbitration proceeding between them concerning a residuals dispute involving the same theatrical and/or television motion picture(s). Except as provided above, awards resulting from the use of these expedited procedures shall not be offered in evidence or cited in arbitrations under this Basic Agreement.

7. **Continuance of Hearing and Testimony by Telephone**

The hearing shall not be continued, absent agreement of the parties, except upon proof of good cause by the party requesting such continuance. The unavailability of any witness shall not constitute good cause unless the witness' testimony is relevant to the issues in the arbitration and could not be received by means consistent with fundamental fairness which do not require the witness' presence at the hearing. Each party shall have the right to present the testimony of any witness by telephone, so long as the arbitrator is satisfied that the examination is consistent with fundamental fairness.

8. **Settlement**

Nothing contained in this Article 11.G. shall preclude the parties from discussing the settlement of the dispute, except that such discussion shall not delay the expedited arbitration procedure.

9. **Time Limit for Use of Expedited Proceedings and Determination of Claims Not Subject to Expedited Arbitration**

The failure of the claimant to serve the Notice of Expedited Arbitration within sixty (60) days following the date on which the facts upon which the claim is based were discovered by the moving party shall constitute a waiver of the right to use this expedited arbitration procedure. If two (2) or more residuals claims are submitted to expedited arbitration and the expedited arbitration procedure has been waived or is inapplicable to one (1) or more claims, absent objection by the respondent, the non-expedited claim(s) may be heard in the expedited proceeding. If the respondent objects to the determination of the non-expedited claim(s) in the expedited proceeding, the same arbitrator selected to hear the expedited claim(s) may, absent objection by a party during the arbitration hearing, determine the claim(s) not subject to expedited arbitration, provided that such non-expedited arbitration claim(s) shall be determined in a separate proceeding conducted in accordance with Article 11.C., above.

10. **Right to Object to Expedited Procedures and Interim Ruling**

The respondent may object to proceeding under this Article 11.G. by serving written notice of such objection with claimant and the arbitrator within seven (7) business days of receipt of the Notice of Expedited Arbitration. The respondent's notice of objection must describe facts indicating it is financially responsible, or that it is not likely that its assets will be depleted or transferred, such that in either case it is reasonable to believe

issue were processed through the grievance and/or arbitration procedures set forth in Articles 11.A. through 11.C. above. In the event of an objection, the claimant shall have the burden of proving that it is consistent with this Article 11.G. to hear the dispute(s) under these expedited procedures.

The arbitrator may convene an informal hearing by telephone conference call, or a formal hearing, to determine whether it is consistent with this Article 11.G. to hear the dispute(s) under these expedited procedures. If the arbitrator convenes a hearing, that hearing will take place within three (3) business days of receipt of the respondent's notice of objection. The parties may file hearing briefs, the page limit to be set by the arbitrator, and they may make closing argument. There will be no post-hearing briefs. The arbitrator must inform the parties of the interim ruling on the use of the expedited procedures under this Article 11.G. within twenty-four (24) hours after conclusion of the hearing or, in the event no hearing is convened, within twenty-four (24) hours of the submission to the arbitrator of all briefs and/or relevant documents, to be followed by an interim ruling in writing.

11. **Bifurcation**

If the expedited arbitration involves multiple residuals disputes or controversies, such as which of two (2) or more respondents is liable to make payment and the amount of residuals unpaid, the arbitrator may, upon the request of a party, bifurcate or separate such disputes or controversies and render separate awards, each of which shall be deemed final.

12. **Invocation of Expedited Proceeding After Service of Claim Under Articles 11.A. through 11.C.**

If, after such time as a residuals arbitration has been commenced under the procedures set forth in Articles 11.A. through 11.C. above, a party learns that a respondent is not financially responsible, or it is likely that the respondent's assets will be depleted or transferred, such that in either case it is reasonable to believe that the respondent would be unable to satisfy its residuals liability if the dispute were processed through such grievance and/or arbitration procedures, any party to that arbitration proceeding may invoke an expedited arbitration under this Article 11.G. by serving appropriate notice to that effect.

13. **Waiver of Time Limits**

Any and all time limits in Article 11.G. may be waived by the mutual consent of the parties.

14. **Other Provisions Applicable**

To the extent not inconsistent with Article 11.G., all other provisions of the Basic Agreement relating to arbitrations shall be applicable.

H. **ARBITRATION OF DISPUTES CONCERNING TRI-GUILD RESIDUALS AUDITS**

See Sideletter to Article 11, Arbitration of Disputes Concerning Tri-Guild Residuals Audits, for the procedures applicable to such cases.

I. **EQUAL STATUS OF PARTIES**

It is understood that the Companies and the Guild are parties of equal status under this Agreement and in the administration of the arbitration processes throughout this Agreement. The equal status of the parties in the administration of the arbitration process shall be recognized in matters involving the determination of the availability of arbitrators, the selection

of hearing dates, the retention of stenographic reporters, and insofar as applicable in all communications with the arbitrators.

Arbitration claims, cross-claims and notices shall carry the caption "WRITERS GUILD OF AMERICA - PRODUCERS ARBITRATION TRIBUNAL."

## ARTICLE 12 - COURT PROCEEDINGS

### A.   DISPUTES CONCERNING CREDITS

Nothing in this Basic Agreement shall limit the rights of the Guild or any writer to assert any and all appropriate legal and equitable rights and remedies to which the Guild or such writer is entitled in courts of competent jurisdiction with regard to an alleged breach of Article 8 and Schedule A of this Basic Agreement with respect to writing credit; subject, however, to the following conditions and limitations:

1.   The Guild and the writer shall be bound by any court proceedings instituted by the Guild.

2.   If the Guild or the writer commences any proceedings in court with respect to any such alleged breach prior to the submission of the dispute to arbitration hereunder, then neither the Guild nor the writer may submit such dispute to arbitration and no arbitrator shall have jurisdiction to consider the alleged breach of such credit provision.

3.   If the Guild or the Company commences an arbitration proceeding hereunder with respect to any such alleged breach prior to the submission of the dispute to a court, then neither the Guild nor the writer shall thereafter commence any proceeding in court with respect to such alleged breach.

4.   Any permissible court proceeding referred to in this Paragraph A. must be commenced by the Guild or the writer, if at all, within the applicable time limits specified in subparagraph 2. of Article 11.A.

### B.   DISPUTES CONCERNING COMPENSATION

With respect to a compensation claim which is arbitrable pursuant to the provisions of this Basic Agreement, the writer, at his/her option, need not proceed by grievance and arbitration, but instead may institute an action at law or in equity with respect to such claim prior to submission of such claim to grievance or arbitration; provided, however, that for compensation claims of four hundred thousand dollars ($400,000.00) or less for theatrical or television employment or purchase, the writer must submit such claim to grievance and arbitration pursuant to Articles 10 and 11 of this Basic Agreement and failure to so proceed by grievance and arbitration shall constitute a waiver by the writer as to such compensation claim.

### C.   Nothing in this Basic Agreement shall impair, affect or limit the right of the Company, the Guild or any writer to assert and exercise any and all appropriate legal or equitable rights or remedies to which such Company, Guild or writer is entitled in any court of competent jurisdiction as to any dispute which is not subject to grievance or arbitration pursuant to this Basic Agreement. The rights of the parties to assert and exercise legal or equitable rights or remedies as to disputes which are subject to grievance or arbitration are as more particularly defined in this Basic Agreement.

### D.   The Guild shall have the right to take to grievance and arbitration a claim of the Guild of a breach by the Company of any of the terms or provisions of this Basic Agreement, including a failure to pay minimum compensation, regardless of whether or not such claimed breach may also involve a breach by the Company of its contract with the writer and such proceeding shall not affect the right of the writer to pursue his/her own remedies at law or in equity, except as limited by the provisions of this Basic Agreement.

E. Nothing in this Basic Agreement shall preclude any court of competent jurisdiction from confirming, setting aside or modifying any grievance or arbitration award hereunder in any proceeding brought for such purpose in accordance with applicable law.

## ARTICLE 13 - COMPENSATION

### A.    THEATRICAL

Company agrees that the minimum basic compensation to be paid a writer who is employed for a feature length photoplay on a so-called flat deal basis shall be as herein set forth.

For the purpose of this Article 13.A.1.a., "High Budget" photoplay shall be a photoplay the cost of which equals or exceeds five million dollars ($5,000,000.00); a photoplay the cost of which is less than five million dollars ($5,000,000.00) shall be referred to as a "Low Budget" photoplay.

The Company may option to purchase or license from a professional writer literary material, which would be covered by this Basic Agreement, for a period of eighteen (18) months upon payment of ten percent (10%) of the applicable minimum compensation for such literary material.  Company may renew or extend such option for subsequent eighteen (18) month periods upon payment of an additional ten percent (10%) of the applicable minimum compensation for such literary material for each such eighteen (18) month period. Notwithstanding anything in this Basic Agreement to the contrary, the option payment(s) shall be credited against the purchase price or other compensation payable to the writer.

# EXHIBIT "B"

BEFORE THE WRITERS GUILD OF AMERICA, WEST, INC.,-- PRODUCERS

ARBITRATION TRIBUNAL

| | | |
|---|---|---|
| In the Matter of the Arbitration between<br>WRITERS GUILD OF AMERICA, WEST,<br>INC.,<br><br>        Complainant,<br><br>Vs.<br><br>CARLSON ENTERTAINMENT GROUP,<br>LLC d/b/a CARLSON ENTERTAINMENT<br>GROUP and BRUCE CARLSON, an<br>Individual,<br><br>        Respondents.    Re "Dad"<br><br>─────────────────────────<br><br>AND RELATED CROSS-CLAIM<br><br>───────────────────────── | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 06-CO-036<br><br>**DECISION AND AWARD OF<br>ARBITRATOR** |

## INTRODUCTION

        This matter came on for hearing on January 24, 2008 before neutral Arbitrator Joel M. Grossman. The hearing was held at the Writers Guild of America, West, Inc., 7000 West Third St., Los Angeles, California. Appearing for Complainant and Cross-Respondent WGA were Cynthia Saffir and Thomas J. Coleman, Jr. and appearing for Respondents and Cross-Complainants Carlson Entertainment Group and Bruce Carlson

1

was Paul N. Sorrell of Lavely and Singer. The parties were afforded an opportunity to present opening statements, introduce evidence, and examine witnesses. At the close of the hearing the parties agreed to file post-hearing briefs. Based on the evidence presented at the hearing, as well as on the parties' post-hearing briefs, the Arbitrator now renders the following decision and award.

## FACTUAL BACKGROUND

This matter concerns a contract entered into between the writing team of Lorenzo Hodges and Trevor Dellecave (hereafter "H&D" or the "Writers") on the one hand, and Carlson Entertainment Group (hereafter "CEG") on the other hand. CEG was at the time a signatory to the WGA Minimum Basic Agreement ("MBA") and Bruce Carlson (Mr. Carlson) executed a letter guaranteeing CEG's performance under the agreement. The agreement was admitted into evidence as Complainant's Exhibit ("CX") 8. CX 8 provides that the Writers, subject to satisfying certain conditions precedent, were engaged on a pay-or-play basis to write a treatment, a first draft screenplay and a final draft screenplay of a project tentatively called "Dad." The compensation set forth in CX 8 is as follows:

$11,252 on commencement of the treatment;
$11,252 on delivery of the treatment;
$14,176 on commencement of the first draft screenplay;
$14,176 on delivery of the first draft screenplay;
$4,717 on commencement of the final draft screenplay; and
$4717 on delivery of the final draft screenplay.
The agreement also provided for payment of pension and health contributions to the WGA's pension and health plans based upon the compensation.

It is not disputed that H&D received the first two payments, for a total of $22,504, but did not receive any other payments. (An additional payment of $14,176 was tendered, half to each of the Writers, but the checks bounced.) It is also not disputed that no contributions were made to the WGA pension and health funds in connection with this project. Finally, it is not disputed that H&D did in fact write and deliver a treatment which was accepted by CEG, but did no further writing.

## THE PARTIES' POSITIONS

### 1. WGA's Contentions

The WGA, on behalf of H&D, maintains that CX 8 is a full and binding agreement, that all conditions precedent were met or waived, and that monies are owed to the Writers, with interest, as well as to the WGA's pension and health funds, with interest. The treatment was written and accepted by CEG. The first draft and final draft screenplays were not written, but the Writers were ready, willing and able to do so had

2

CEG paid the commencement money for the first draft screenplay. Since CX 8 was a "pay-or-play" deal, all monies are due, even though the first and final drafts of the screenplay were not written. The WGA also contends that the amount paid for the treatment was below WGA minimum compensation, and seeks the difference. Specifically, the WGA seeks an award of damages as following:

1. An additional $2,349, plus pension and health contributions, for the treatment, since the amount set forth in CX 8, and paid to the Writers, is below WGA minimum;
2. Pension and health contributions for the amount of the treatment payments which were actually made to H&D, since those contributions were never paid;
3. Additional payment of $37,786 for the first and final screenplay drafts, as well as pension and health contributions on these funds; and
4. Interest on all amounts running from the date the amounts were first due through the present.

## 2. CEG's Contentions

CEG denies that any additional monies are due, and in fact filed a cross-claim seeking reimbursement of the monies which were paid for the treatment. CEG maintains that the Writers are not due anything under CX 8 because
(a) they did not fulfill the conditions precedent of submitting a Certificate of Authorship, or submitting INS Form I-9's;
(b) they violated par. 23 of CX 8 because they were not, when the contract was signed, members of the WGA;
(c) they obtained the engagement through false and fraudulent representations that they were members of the WGA and that they would present the project to popular comedian Dane Cook in order to persuade him to appear in the project; and
(d) the treatment was delivered five weeks late, in contravention of the sentence in CX 8 that states that "[t]ime is of the essence hereof with respect to all delivery dates."

In its cross-claim CEG alleges that because the Writers either failed to abide by their obligations under the agreement, or because the Writers induced CEG to enter into the agreement through false representations, the Writers must reimburse CEG for the payments which were made. CEG also contends that even if the Arbitrator determines that payments called for by the contract must be paid, the applications H&D signed for membership in the WGA were improper, as they were not submitted within 30 days of employment on "Dad." Thus, even if they may benefit from the provisions of the agreement, they may not benefit from any provisions of the MBA, including specifically pension and health contributions. According to CEG, they are not entitled to the MBA minimum for a treatment because they were not members, and they are not entitled to pension and health contributions because they were not members when they signed the agreement, and their attempt to gain membership by virtue of the "Dad" writing was insufficient under the WGA's rules. Finally, CEG contends that even if the MBA does

apply, the treatment payment should not be augmented because H&D were new writers, and CEG was entitled to pay them 75% of the MBA minimum.

## DISCUSSION

The meaning of CX 8 and the payments required thereunder are not hard to discern. The Writers were to write in three steps: a treatment, a first draft screenplay, and a final draft screenplay. Each step was to commence upon payment of commencement money. Upon completion of each step, the balance for that step was due and payable. The agreement specifically calls for the payment of contributions to the WGA's pension and health funds based on all payments. The contract makes clear that it is a "pay-or-play" deal meaning that CEG would be responsible for making all payments whether or not it ultimately intended to produce the film, or to use H&D's work, or to purchase additional steps beyond the treatment. Based on the plain language of the agreement, and absent a valid excuse or defense, CEG (or Mr. Carlson, as guarantor) must make all payments demanded by the WGA. The question now arises as to whether any of the defenses asserted by CEG are valid, and extinguish all, or any portion of the claims set forth by the WGA. For the reasons set forth below, the Arbitrator determines that with one exception, none of the defenses are valid, and that full payment must be made. The exception is that the Arbitrator agrees that CEG was entitled to pay the reduced "new writer" minimum on the treatment, so no additional base compensation is due on the treatment, although health and pension contributions based on the treatment must be paid. The Arbitrator will now discuss each of the proffered defenses in turn.

### 1.  The Conditions Precedent

Respondents argue that one or more of the Conditions Precedent set forth in the second introductory paragraph of CX 8 were not met, thereby extinguishing any duties which CEG owed to H&D. These conditions are as follows: that the Certificates of Authorship be provided, and that INS form I-9's need to be presented. The Arbitrator concludes that these terms were not material could be, and in fact were waived by CEG. As will be noted several times herein, CEG paid the commencement money for the treatment, and the completion money for the treatment. CEG clearly accepted the Writers' adherence to the contractual terms sufficiently to order commencement of the treatment. Had CEG been dissatisfied with the Writers' compliance with the conditions precedent, it could have—and should have—withheld the commencement money on the treatment until such terms were met to its satisfaction, but it did not. Thus, these terms were waived and cannot now be cited to excuse CEG from performance of its obligations under the agreement.

### 2.  The Treatment Was Late

CEG notes that the contract explicitly states that time is of the essence on all delivery dates. It follows, CEG contends, that if the treatment was not submitted within the 4 weeks provided in the contract, the contract is null and void, no further payments

4

are due, and monies paid must be returned. Yet, that clearly was not Respondents'
position at the time the treatment was submitted. Respondents paid for the treatment as
per the agreement notwithstanding its being submitted late. Moreover, par. 10 of the
agreement provides that CEG could suspend the Writers' services as well as any
payments under several circumstances, one of which was default. As set forth in par.
10(b) of CX 8, in the event of a failure by the Writers to "perform fully hereunder" CEG
could send a notice to the Writers about said failure, and they would have 48 hours in
which to perform their obligations. Thus, if CEG deemed the Writers in default for failing
to deliver the treatment timely, they were required to send H&D a notice giving them 48
hours to cure the default. CEG never gave such notice. Indeed, when asked if he had any
discussions with H&D about "where's the treatment?" Mr. Carlson testified that "I don't
jump on people. It's not my style. And I won't jump on people." (Tr. 106) Neither CEG
nor Mr. Carlson in any manner notified the Writers that they were in default due to the
late delivery of the treatment and that they had 48 hours in which to deliver it. Based on
CEG's failure to exercise its rights under par. 10(b) and its acceptance of and payment for
the treatment, CEG cannot now be heard to claim that the lateness of the treatment
constituted a breach which relieves it of any further obligations under the agreement.

### 3. The Writers Misrepresented Their Non-Member Status

It is not disputed that H&D were not WGA members at the time that they entered
into the agreement. Respondents argue, however, that H&D induced them into entering
into the agreement based upon "false statements concerning (a) their membership in the
Guild…" (Respondents' Brief, p. 3). On this point, Hodges testified that it was actually
Mr. Carlson's idea that H&D join the WGA: "…it was actually his idea to see if he
wanted to put us into the Guild. So Trevor and I got together and talked about the pros
and cons of being in the Guild, and we decided that, yes, we would be in the Guild for
this project; we would join the Guild." (Tr. 28-29) Hodges' testimony is corroborated by
CX 29, an email Dellecave sent to Mr. Carlson which is dated January 11, 2006, and
which states: "Hey, Bruce—got your message about the WGA stuff. I talked to them too.
You were right about it. ..Basically, once we get an official contract signed and whatnot,
we're eligible and required to join. We contact the WGA and they send us an application
packet to fill out…one feature is enough for both Lorenzo and I to join…"
This email is not ambiguous. It is clear from the email that Mr. Carlson on the one hand,
and H&D on the other hand, had been having discussions on how H&D could use the
"Dad" project as a vehicle to join the Guild. And these conversations happened weeks
before the parties signed CX 8. The Arbitrator therefore rejects the claim that H&D
induced CEG to enter into the agreement based on false statements about their Guild
status.

### 4. Misrepresentations About Dane Cook

Respondents contend that they were induced to enter into the agreement based on
false statements concerning: "[H&D's] intent and ability to obtain the participation of
well-known comedic actor, Dane Cook." (Respondents' Brief p. 3). In sum and substance
Respondents' argue that they were willing to sign the deal with H&D only because of a

5

representation that H&D could get Mr. Cook involved in the project. Mr. Carlson testified extensively on this topic. He testified that in December, 2005 he presented to Hodges the idea of a movie about a dad and a teenage girl and that after some discussion about it Hodges said: "Wow, that would be great for Dane Cook." (Tr. 94) Mr. Carlson told Hodges he would like to meet Mr. Cook. However, according to Mr. Carlson, the day before he was to come out to Los Angeles to meet Cook, Hodges called Mr. Carlson to tell him that Cook's mother had cancer. (Tr. 96) Mr. Carlson went on to testify that he agreed "to go ahead with the deal at that time, because I wasn't going to say anything about [Cook's mother's] cancer." (Tr. 98) The discussion about cancer is verified by an email sent from Hodges to Mr. Carlson dated December 30, 2005: "I also spoke with dane and I am spending the day with him in a few weeks and I will present the project to him them [sic]. He called to tell me about his mom having cancer and I didn't find it the proper time." (RX 219) A few days later Hodges sent a similar email about Cook: "I'll present it to Dane when I hang with him this month was planning on it anyhow)." (RX 220) Hodges testified that in fact he never presented the project to Cook. (Tr. 63) The sum total of the evidence appears to be that prior to entering into the agreement, Hodges represented to Mr. Carlson that he would *present the idea* of "Dad" to Cook, but never did so. The Arbitrator notes that there is no evidence that Hodges promised to attach Cook to the project, only that he would present it to Cook.

Mr. Carlson testified that on a previous project H&D had falsely claimed that they could get another well-known actor, Chad Michael Murray, involved, but had not delivered. (Tr. 92) So one might assume that if Mr. Carlson wanted some assurance that Cook would be involved prior to entering into a binding agreement with H&D, then he would have insisted on a clause whereby the entire project, and any payments to H&D, would be conditioned on Cook's involvement. Yet, nothing in the agreement has any such provision. Indeed par. 22 of the agreement states that: "This Agreement constitutes the entire understanding between the parties…" language which precludes a claim that there was any provision of the contract was conditioned on a term not set forth. (CX 8)

At the hearing Respondent's counsel asked Mr. Carlson if the only reason he went forward with the treatment "was that there would be a star [namely Cook] attached." Mr. Carlson answered "It's the only reason I went forward. And then his mother had cancer." (Tr. 110) The answer is interesting, because it is clear from Mr. Carlson's testimony and from RX 211 that Mr. Carlson knew about the cancer in late December, more than a month before he signed the agreement. Also, it is clear from an email Mr. Carlson wrote to H&D on February 5, 2006, just after signing the agreement, that he understood fully that Cook might or might not be involved: "whichever way you'll take it will be fine for me. You should probably write it for the sense of humor for dane cook, *though, that doesn't mean he'll do it but we can go down that path. If we ever get a chance to approach dane—I assure you that we will be able to close that deal."* (CX 30, emphasis added) This is evidence that there was never a star attached, and Mr. Carlson knew full well that Cook might or might not be in the film.

In sum, it is true that before the contract was signed Hodges represented to Mr. Carlson that he would present the project to Cook. It is also true that Hodges never

presented the project to Cook.  The parties entered into a binding contract with no
certainty at all about Cook's potential involvement. If it did not intend to hire H&D for
this project unless Cook would be attached, then CEG could have protected itself by
making that a condition of the agreement. Mr. Carlson's email of February 5 (CX 30)
makes clear that CEG entered into the agreement fully aware that Cook might or might
not be attached. For these reasons the Arbitrator determines that Hodges' failure to
present the idea to Cook does not relieve CEG of its duties under the agreement.

5. **Applicability of the MBA—Including its Provisions Regarding Interest and
   Contributions to Health and Pension Plans**

Respondents argue that even if it is determined that CEG must pay all of the sums
set forth in the agreement, H&D should not recover anything more, such as interest, or
pension and health contributions, which are called for by the MBA. Further, Respondents
assert that because the MBA does not apply to this matter, they have no duty to pay a
higher minimum for the treatment. They claim that  the MBA does not govern H&D's
claims for two reasons: first, because they did not timely apply for WGA membership,
based on their writing of "Dad," and as nonmembers they cannot avail themselves of the
benefits of the MBA, and second, because H&D were not members of the WGA when
they entered into the agreement. (Respondents' Brief  p. 9). However, as set forth earlier
in this Decision, the parties clearly contemplated that H&D would use their "Dad"
engagement in order to apply to and join the WGA. CX 29. Moreover, the agreement
expressly states that it is to be governed by the MBA, and the last sentence of par. 23
explicitly requires the payment of applicable pension and health funds contributions. CX
8 at par. 23.  Because the parties fully anticipated that H&D would become full WGA
members by writing "Dad," and because the agreement expressly calls for the payment of
pension and health contributions, CEG is estopped from claiming that the monies are not
due. Respondents' argument that the WGA somehow erred in accepting H&D's
applications for membership is of no avail. Clearly it is the WGA that must determine the
standards for membership in its own organization and it has in fact determined that these
two Writers are members, and in light of that determination H&D are entitled to the
benefits of the MBA.

6. **No Additional Minimum Compensation is Due for the Treatment**

Respondents assert that even if the MBA applies to this writing project, no
additional minimum compensation is due on the treatment because H&D were new
writers, and under Article 13.A.1.b of the MBA CEG was entitled to pay them 75% of the
MBA minimum. The WGA contends that this discount was not available to CEG because
one of the Writers—Dellecave—had previously worked on the covered program "King of
Queens." This issue is governed by the following language from Article 13.A.1.b of the
MBA: "Company may employ a writer who has not been previously employed as a writer
under any Guild MBA in television or theatrical motion pictures or radio dramatic
programs on a flat deal basis at not less than seventy-five percent (75%) of the applicable
minimum compensation…" On this point Dellecave testified as follows: "I sold a story to

7

the 'King of Queens' sitcom." (Tr. 127.) Dellecave did not testify that he had been "employed" to write for the "King of Queens," only that he sold a script to them. The WGA did not introduce into evidence any documents regarding Dellecave's employment on the series, relying solely on Dellecave's somewhat vague testimony. In the absence of more complete information, it is not clear to the Arbitrator that this sale qualifies as "prior employment" under the MBA, and for this reason the Arbitrator agrees with Respondents that CEG was entitled to the discount and need pay no further sum for the treatment. However, pension and health contributions would still be due on the contractual sum for the treatment, with interest.

## AWARD

In light of the findings and conclusions reached by the Arbitrator, CEG is hereby ordered to pay the WGA, on behalf of Hodges and Dellecave, the following:

1. $14,176 for the first draft screenplay, plus applicable interest;
2. $14,176 for the final draft screenplay, plus applicable interest;
3. $4,717 for the final draft screenplay, plus applicable interest;
4. $4,717 for the final draft screenplay, plus applicable interest.
5. CEG is hereby ordered to pay the WGA-Producers pension and health funds pension and health contributions on the $22,504 paid for the treatment, with applicable interest; and pension and health contributions on all other writing fees set forth in points 1-4 above, with applicable interest.
6. Interest rates are 1.5% per month for the unpaid compensation in items 1-4 above, and .83% per month for pension and health contributions set forth in items 5-6 above. Interest began to run on the pension and health contributions required for the treatment on the date the treatment was delivered, April 7, 2006. Interest on the unpaid sums dues for the first draft and final draft screenplays, as well as interest due on pension and health contributions required for these drafts, began to run four weeks later, the time when commencement money was due for the first draft screenplay, on May 5, 2006. Interest continues to accrue until all sums are paid in full.

In light of the above findings and conclusions reached by the Arbitrator, it follows that Respondents' cross-claim is denied.

IT IS SO ORDERED

Dated: April 7, 2008                                        Respectfully submitted,

Joel M. Grossman, Arbitrator

8

# EXHIBIT "C"

**WGAW** **WRITERS**
**GUILD** OF
**AMERICA**,WEST

LEGAL/CLAIMS
DEPARTMENT
PH 323 782 4521
FAX 323 782 4806

CYNTHIA R. SAFFIR
DIRECTOR OF LEGAL SERVICES

THOMAS J. COLEMAN, JR
ASSOCIATE COUNSEL

ANNA M. CALDERÓN
ASSOCIATE COUNSEL

ERIKA A. ZUCKER
ASSOCIATE COUNSEL

KATHERINE SHANNON
CHRISTOVICH
ASSOCIATE COUNSEL

MARY E. JERRIDO
BUSINESS REPRESENTATIVE

SCOTT SAWYER
BUSINESS REPRESENTATIVE

URIEL RAMIREZ
BUSINESS REPRESENTATIVE

ERIKA L. HOLMES
PARALEGAL

LEGAL DEPARTMENT
(RESIDUALS)
PH 323 782 4535
FAX 323.782.4816

BONNIE J. MORAN
SENIOR RESIDUALS COUNSEL

S. JENNY PARK
ASSOCIATE RESIDUALS
COUNSEL

KATYA J. CULBERG
ASSOCIATE RESIDUALS
COUNSEL

September 11, 2008

U.S. MAIL AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7007 2560 0002 8475 6641

Paul Sorrell
Lavely & Singer
2049 Century Park East, Suite 2400
Los Angeles CA 90067-2906

Re:   WGAW v. Carlson Entertainment Group LLC
      d/b/a Carlson Entertainment Group and Bruce Carlson
      WGAW Case No. 06-CO-036 ["Dad"]

Dear Mr. Sorrell:

Enclosed you will find the Arbitration Award decided by Arbitrator
Grossman dated April 7, 2008 against Carlson Entertainment Group and
Bruce Carlson.  Per the terms of the Award, the WGAW demands
compliance with the Award no later than September 28, 2008 and
payment of the following sums to the WGAW no later than that date:

| | |
|---|---:|
| Unpaid compensation for first draft screenplay and final draft screenplay on behalf of the Writing Team of Lorenzo Hodges and Trevor Dellecave: | $37,786.00 |
| Interest as of September 11, 2008 on the unpaid compensation on behalf of the Writing Team: | $15,870.12 |
| Unpaid pension and health contributions on the treatment on behalf of the Writing Team: | $3,263.08 |
| Interest on the unpaid pension and health contributions on the treatment on behalf of the Writing Team: | $758.34 |
| Unpaid pension and health contributions on the first and final draft screenplays on behalf of the Writing Team: | $5,478.97 |

Interest on the unpaid pension and health contributions
on the first and final draft screenplays on behalf of the
Writing Team:                                              $1,273.31

**Total:**                                              **$64,442.82**

Please immediately forward a check for **$64,442.82** made payable to the
Writers Guild of America, West, Inc. to my attention at the Guild.

If payment of the amount due is not made before September 28, 2008,
Carlson Entertainment Group LLC and Bruce Carlson may be held liable
for attorney's fees and costs incurred in confirming the award in court,
and may be placed on the WGAW strike list.

Thank you for your attention and consideration in this matter.

Very truly yours,

Thomas J. Coleman, Jr.
Associate Counsel


Enclosure

cc:    Lorenzo Hodges (w/out enclosure)
       Trevor Dellecave (w/out enclosure)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge A. Howard Matz and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV09- 6582 AHM (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Writers Guild of America, West, Inc. | Carlson Entertainment Group, LLC d/b/a Carlson Entertainment Group and Bruce Carlson, an individual<br>Relating to Arbitrator's Award Confirmation WGAW Case 06-CO-036 |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Thomas J. Coleman, Jr., Esq. (State Bar Number 145663)<br>Writers Guild of America, West, Inc.; 7000 W. Third Street<br>Los Angeles, CA 90048; (323) 782-4521 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS — PERSONAL INJURY | TORTS — PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☑ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | IMMIGRATION | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | ☐ 465 Other Immigration Actions | | |

**FOR OFFICE USE ONLY:**   Case Number: _____ CV09-06582 _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Illinois |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date 9/9/09

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |